UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKANSKA USA CIVIL WEST CALIFORNIA DISTRICT INC., <br><br>Plaintiff, <br><br>v. <br><br>NATIONAL INTERSTATE INSURANCE COMPANY, <br><br>Defendant. | Case No.: 20-cv-367-WQH-AHG <br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendant National Interstate Insurance Company. (ECF No. 7).

**I. PROCEDURAL BACKGROUND**

On February 27, 2020, Plaintiff Skanska USA Civil West California District Inc. ("Skanska") filed a Complaint against Defendant National Interstate Insurance Company ("National Interstate"). (ECF No. 1). Plaintiff Skanska, "for itself and as assignee of Zurich American Insurance Company" ("Zurich American"), alleges that National Interstate breached its duty to defend Skanska in a 2016 lawsuit and brings claims for 1) declaratory relief; 2) breach of insurance contract; 3) breach of implied covenant of good faith and fair

dealing; 4) assigned claim for equitable indemnity; and 5) assigned claim for equitable contribution. (*Id.* at 1).

On April 16, 2020, National Interstate filed a Motion to Dismiss. (ECF No. 7). National Interstate moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the second cause of action for breach of insurance contract "to the extent that cause of action is based on the 'assignment' alleged in the [C]omplaint," the fourth cause of action for equitable indemnity, and the fifth cause of action for equitable contribution. (*Id.* at 1).

On May 12, 2020, Skanska filed an Opposition to the Motion to Dismiss. (ECF No. 9). On May 19, 2020, National Interstate filed a Reply. (ECF No. 10). On May 26, 2020, Skanska filed a Sur-Reply. (ECF No. 13).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff Skanska is "a contractor that was involved in a highway reconstruction project at Interstate 805 in San Diego County." (ECF No. 1 ¶ 28). In February 2016, Skanska hired "Reeve Trucking Co., Inc. and/or Reeve Trucking Company" ("Reeve") "to transport thirteen 100-foot long steel I-beams from a construction site near Sorrento Valley, California to a storage site in Lakeside, California." (*Id.* ¶¶ 12, 29).

On February 12, 2016, "Peter Chavarin was driving a motorcycle heading northbound on State Route 67 when he collided" with Reeve's tractor-trailer carrying the I-beams, driven by Reeve employee Christopher Collins, as the tractor-trailer was "making a left turn from southbound State Route 67 toward the entrance of the storage site . . . ." (*Id.* ¶¶ 33-34). "Chavarin sustained severe injuries, including traumatic brain injury, coma, thoracic spine fracture, and other bone fractures." (*Id.* ¶ 35).

On April 6, 2016, Chavarin and his wife filed a complaint for damages against Skanska, Reeve, and Collins in the Superior Court for the State of California County of San Diego, *Peter Chavarin, et al. v. Christopher Collins, et al.*, No. 37-2016-00011241-CU-PA-CTL (the "Chavarin Action"). "[O]ne of the Chavarins' theories of liability against

Skanska was that Skanska is vicariously liable for the conduct of Reeve and/or Collins under the doctrine of peculiar risk . . . ." (*Id.* ¶ 39).

Skanska is insured under "a commercial general liability policy" issued by Zurich American (the "Zurich American Policy"). (*Id.* ¶ 23). The Zurich American Policy affords coverage to Skanska "in excess of any and all 'other insurance, whether primary, excess, contingent on or on any other basis,' in cases where the loss arises out of the maintenance or use of an 'auto' not owned or operated by Skanska." (*Id.* ¶ 25). "Under the Zurich American Policy and subject to Skanska's [$500,000] deductible obligation, Zurich American provided a defense in the Chavarin Action . . . ." (*Id.* ¶ 38).

Skanska is also "an insured under commercial motor carrier liability insurance and excess liability insurance policies issued [to Reeve] by National Interstate . . . ." (*Id.* ¶ 3).

> National Interstate issued to Reeve . . . a commercial motor carrier liability insurance policy (the "Primary National Interstate Policy") . . . with limits of $1,000,000 per accident for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

(*Id.* ¶ 12). Under the Primary National Interstate Policy, the following are included as "insureds:"

> a. You [*i.e.*, Reeve] for any covered "auto."
> b. Anyone else while using with your permission a covered "auto" you own hire or borrow [*i.e.*, Christopher Collins] . . . .
> . . .
>  e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(*Id.* ¶ 15). "The Reeve-owned tractor-trailer involved in the accident is a 'covered auto' under the Primary National Interstate Policy." (*Id.* ¶ 14). "National Interstate has a duty to defend an insured in a suit asserting a claim for which a potential for coverage under the Primary National Interstate Policy exists." (*Id.* ¶ 13).

"National Interstate also issued to Reeve an excess liability insurance policy . . . ." (the "Excess National Interstate Policy") with a limit of "$5,000,000 Each Incident." (*Id.* ¶¶ 19, 21). "Status as an insured under the Excess National Interstate Policy is conferred to those same persons and entities which qualify as an insured under the Primary National Interstate Policy." (*Id.* ¶ 22).

"On or about April 15, 2016, tender was made to National Interstate for Skanska's defense and indemnity against the claims asserted against Skanska in the Chavarin Action." (*Id.* ¶ 44). "On April 21, 2016, National Interstate denied its obligation under the National Interstate Policies, or either of them, to defend and indemnify Skanska in the Chavarin Action." (*Id.* ¶ 45). After the Chavarins filed a first and second amended complaint, National Interstate again declined to provide any defense to Skanska.

"[I]n early May of 2017 National Interstate [ ] agreed to pay $6,000,000 to settle the Chavarins' claims against Reeve and Collins only . . . ." (*Id.* ¶ 69). "On or about May 26, 2017, a copy of the Chavarins' proposed Third Amended Complaint was provided to National Interstate," and Skanska "demand[ed] . . . that National Interstate provide a defense . . . ." (*Id.* ¶ 78). "On June 2, 2017, National Interstate wrote a letter advising that it will agree to participate in the defense of Skanska." (*Id.* ¶ 80). "The Third Amended Complaint in the Chavarin Action was filed August 18, 2017." (*Id.* ¶ 88). National Interstate agreed to "continue to contribute toward the cost of the defense of Skanska in the Chavarin Action . . . ." (*Id.* ¶¶ 91, 93).

In April 2018, "[t]he Chavarins agreed to settle their claims against Skanska in the Chavarin Action in exchange for payment of $2,950,000." (*Id.* ¶ 112). "Zurich American, without contribution by National Interstate or by any other insurer, paid $2,950,000, subject to reservation of rights, to indemnify Skanska in settlement of the Chavarins' liability claims asserted against Skanska in the Chavarin Action." (*Id.* ¶ 117). "National Interstate has not paid its full and equitable share of the fees and costs, incurred after May 26, 2017, of Skanska's defense in the Chavarin Action." (*Id.* ¶ 95). "National Interstate has

paid no amount for the fees and costs incurred in Skanska's defense in the Chavarin Action incurred prior to May 26, 2017." (*Id.* ¶ 96).

"Zurich American has assigned to Skanska all of its rights and claims against National Interstate regarding the Chavarin Action, including without limitation those rights and claims it obtained by virtue of its payments for Skanska's defense [and indemnity] in the Chavarin Action." (*Id.* ¶¶ 100, 118).

### III.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a

claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

## IV. ASSIGNMENT OF ZURICH AMERICAN'S CLAIMS

Defendant National Interstate requests that "this Court dismiss Skanska's causes of action for breach of contract (for those amounts exceeding $500,000), equitable indemnity, and equitable contribution on the ground that Skanska does not have a valid assignment and therefore is not the real party in interest as to these claims." (ECF No. 7-1 at 15). National Interstate contends that an assignment is valid only if the assignor does not retain any power to control the action or the attorney assigned to prosecute the action. National Interstate contends that Zurich American's assignment of its claims to Skanska is invalid because the heavily redacted "Joint Prosecution and Common Interest Agreement" "indicates that the redacted sections not only require Skanska to remit to Zurich American some (or perhaps all) of any proceeds of the litigation, but also that Zurich American retains at least some control over this litigation." (*Id.* at 13 (emphasis omitted)).

Skanska contends that "[f]rom the unredacted portion of the agreement at issue here, quite clearly and explicitly, Zurich assigned to Skanska all of Zurich's rights with regard to any payment it made for the defense or indemnity of Skanska in relation to the underlying action giving rise to this coverage suit." (ECF No. 9 at 10). Skanska represents that "[a]s part of the agreement in which Zurich assigned all of its claims, Zurich and Skanska agreed to share in certain tasks associated with the prosecution of these claims (e.g., providing evidence to support the claims, both in the form of documents and live, witness testimony, if necessary)." (*Id.* at 5-6). Skanska represents that "the assignment of rights provision is clear, unequivocal, and absolute: Zurich maintains no rights, claims or causes of action against National Interstate . . . in relation to the Chavarin suit -- all have been assigned to Skanska for Skanska to prosecute and resolve in this suit . . . . National faces no risk of a second suit by Zurich." (*Id.* at 6, 7). Skanska contends that National Interstate "provides no legal support for its contention that there is some element of 'control' over the litigation which vitiates an assignment." (*Id.* at 11).

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "Such a requirement is in place to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Sung Ho Cha v. Rappaport (In re Sung Ho Cha)*, 483 B.R. 547, 551 (B.A.P. 9th Cir. 2012) (citation omitted). "[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000); *see Sprint Commc'ns. Co. v. APCC Servs.*, 554 U.S. 269, 275 (2008) ("Assignees of a claim, including assignees for collection, have long been permitted to bring suit."). In a diversity action, whether the plaintiff is the proper party to maintain the action is determined by state law. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093-94 (9th Cir. 2004), *as amended*.

A "chose in action"—"an interest in property not immediately reducible to possession . . . includ[ing] a financial interest such as a debt, a legal claim for money, or a contractual right"—is assignable. *Sprint Commc'ns. Co.*, 554 U.S. at 275, 278; *see Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012) ("An assignment is a commonly used method of transferring a cause of action." (citation omitted)). "A complete assignment passes legal title to the assignee who is the real party in interest and may sue in his or her real name." *Fink v. Shemtov*, 210 Cal. App. 4th 599, 610 (2012) (quoting *Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012)). "[A]n assignment of a chose in action for collection vests the legal title in the assignee whether or not any consideration is paid therefor. In such case the assignee may maintain a suit thereon in his own name, even though the assignor retains an equitable interest in the thing assigned." *Id.* (emphasis omitted) (quoting *Nat'l Reserve Co. v. Metro. Trust Co.*, 17 Cal. 2d 827, 831 (1941)).

Under California law, "[i]n determining whether an assignment has been made, 'the intention of the parties as manifested in the instrument is controlling.'" *Cal. Ins. Guar. Ass'n*, 203 Cal. App. 4th at 1335 (quoting *Nat'l Reserve Co. v. Metro. Trust Co.*, 17 Cal.

2d 827, 832 (1941)). "An assignment requires very little by way of formalities and is essentially free from substantive restrictions." *Amalgamated Transit Union, Local 1756*, 46 Cal. 4th 993, 1002 (2009). To be effective, an assignment "must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person . . . ." 203 Cal. App. 4th at 1335 (alteration in original) (quoting *Recorded Picture Co. [Prods.] Ltd. v. Nelson Entm't*, 53 Cal. App. 4th 350, 368 (1997), *as corrected and modified on denial of reh'g*, 1997 Cal. App. LEXIS 265 (Apr. 3, 1997)).

In *Fink*, the California Court of Appeal determined that an assignment of "all rights to the debt allegedly owed" was "complete and absolute" even though the assignee agreed to split with the assignor any recovery obtained in prosecuting the assigned claims. 210 Cal. App. 4th at 612-13; *see Sprint Commc'ns. Co.*, 554 U.S. at 285-86 (holding that assignees of payphone operators' claims against long distance carriers had standing, even though monetary recovery from the suit would be remitted to the payphone operators); *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1282-83 (9th Cir. 1983) (the retention by pharmacies of an interest in outcome of an action did not prevent the assignee pharmaceutical association from being treated as the real party in interest for purposes of Rule 17(a)).

In this case, Skanska alleges that "Zurich American has assigned to Skanska all of its rights and claims against National Interstate regarding the Chavarin Action, including without limitation those rights and claims it obtained by virtue of its payments for the defense and indemnity of Skanska in the Chavarin Action." (ECF No. 1 ¶ 6). National Interstate attaches a copy of the heavily redacted "Joint Prosecution and Common Interest Agreement" (the "Agreement") between Skanska and Zurich American to the Motion to Dismiss. Under the "incorporation by reference" doctrine, the court may consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon*

*Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002)). The incorporation by reference doctrine has been extended to "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)). Neither party has challenged the authenticity of the Agreement.

The Agreement provides, in part:

> 1. Skanska and Zurich each have, and may have, and/or may acquire claims, demands, damages, rights of action and/or causes of action against National Interstate Insurance Company arising from, arising out of, or relating to (a) the attorneys' fees, costs, and other expenses incurred and paid by the Parties in defending Skanska against the Chavarin Action, (b) the indemnification of Skanska against liability claims asserted in the Chavarin Action, and/or (c) the conduct, acts or omissions of National Interstate Insurance Company in connection with the defense and indemnification of Skanska relating to the Chavarin Action. These claims, demands, damages, rights of action and/or causes of action described in this paragraph include, without limitation, claims for breach of contract, bad faith, negligence, indemnity, subrogation and/or contribution.
>
> Collectively, these claims, demands, damages, rights of action and/or causes of action described in this paragraph are referred to as the "National Interstate Claims."
>
> 2. To facilitate the pursuit of the National Interstate Claims, Zurich agrees to and does hereby assign to Skanska those National Interstate Claims that Zurich has, may have or may acquire, specifically including, without limitation, any claims that Zurich has, may have or may acquire against National Interstate Insurance Company for equitable subrogation, equitable contribution, equitable indemnity and/or any other claims against National Interstate Insurance Company based upon Zurich's payments made in connection with the defense and/or indemnity of Skanska in the Chavarin Action. Redacted

    2.a Zurich represents and guarantees that it has not previously made, and has not promised or agreed to make, to anyone other than Skanska any assignment of its National Interstate Claims other than the assignment set forth in the foregoing paragraph 2 of this Agreement.

    3. The Parties further agree that any litigation that may be filed for the prosecution of the National Interstate Claims (hereinafter, the "Litigation") will be brought in the name of Skanska.[1]

Redacted

(Agreement, Ex. 3, Decl. of Matthew S. Harvey, ECF No. 7-5 at 5-6).

  In the unredacted sections of the Agreement, Zurich American explicitly "assign[ed] to Skanska" its "claims, demands, damages, rights of action and/or causes of action" against National Interstate for "breach of contract, . . . indemnity, [ ] and/or contribution" relating to the Chavarin Action. (*Id.*). Zurich American "manifest[ed] . . . [its] intention to transfer the right" to Zurich American's "claims, demands, damages, rights of action and/or causes of action" to Skanska. *Cal. Ins. Guar. Ass'n*, 203 Cal. App. 4th at 1335; Agreement, Ex. 3, Decl. of Matthew S. Harvey, ECF No. 7-5 at 5. The allegations in the Complaint and the unredacted sections of the Agreement demonstrate that the assignment of Zurich American's claims is "complete and absolute" at this stage in the proceedings. *See Fink*, 210 Cal. App. 4th at 612-13 (holding that there was insufficient evidence for the trial court to determine an assignee lacked standing where the "assignment was complete and absolute," the assignee agreed to provide the assignor with 50% of the recovery, the assignee did not agree to represent the assignor or provide any legal advice, the assignee "filed the complaint against defendants in his own name and was the sole plaintiff," and "there was no evidence that [the assignor] retained any control over, or the right to control, the litigation of the assigned claims . . .").

---

[1] The subsequent two and a half pages of the Agreement are redacted.

Based on the facts alleged in the Complaint and the unredacted sections of the Agreement available to the Court at this time, the Court concludes that Skanska has stated facts that demonstrate an intent by Zurich American to completely assign its claims against National Interstate to Skanska, entitling Skanska to pursue the claims alleged in the Complaint at this stage in the litigation. National Interstate's Motion to Dismiss Skanska's causes of action for breach of contract (for those amounts exceeding $500,000), equitable indemnity, and equitable contribution on the ground that Skanska does not have a valid assignment and therefore is not the real party in interest is denied.

## V.     EQUITABLE INDEMNIFICATION

National Interstate contends that Skanska's claim for equitable indemnity is invalid because equitable indemnity only applies to joint tortfeasors, not to claims based on an insurance contract. Skanska contends that "[e]quitable indemnity is routinely applied as between insurers where one insurer asserts that it paid a loss which should have been paid primarily by another." (ECF No. 9 at 16). Skanska contends that "[b]ecause Skanska alleges that the obligation owed by Zurich was excess to that owed by National, equitable indemnity is properly pled." (*Id.* at 17).

Equitable indemnity is one of three equitable claims potentially available where several insurers cover the same event: equitable indemnity, equitable contribution, and equitable subrogation.

> The case law discussing the three principles of contribution, indemnification and subrogation in the insurance context is surprisingly muddled; courts have often confused the principles, thereby providing a fertile supply of quotations for parties seeking to utilize any one of the three concepts as the need arises. As one California appellate court noted, "[I]t is hard to imagine another set of legal terms with more soporific effect than indemnity, subrogation, contribution, co-obligation and joint tortfeasorship." *Herrick Corp. v. Canadian Ins. Co.*, 29 Cal. App. 4th 753, 756 (1994).

*Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.*, No. C-98-1060 VRW, 2000 U.S. Dist. LEXIS 17688, at *6-7 (N.D. Cal. Nov. 13, 2000). "Equitable indemnity 'applies in cases in which one party pays a debt for which another is primarily liable and which in

equity and good conscience should have been paid by the latter party.'" *United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644-45 (2001) (quoting *Phoenix Ins. Co. v. U.S. Fire Ins. Co.*, 189 Cal. App. 3d 1511 (1987), *superseded by statute on other grounds as stated in Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd.*, 128 Cal. App. 4th 307 (2005)). "The basis for the remedy of equitable indemnity is restitution," i.e., "[o]ne person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." *AmeriGas Propane, L.P. v. Landstar Ranger, Inc.*, 184 Cal. App. 4th 981, 989 (2000) (citation omitted).

In *Stop Loss Insurance Brokers, Inc. v. Brown & Toland Medical Group*, the California Court of Appeal stated, "It is well settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." 143 Cal. App. 4th at 1040 (citing *Leko v. Cornerstone Bldg. Inspection Serv.*, 86 Cal. App. 4th 1109, 1115 (2001) ("Joint and several liability is a prerequisite for equitable indemnity." (citation omitted)); *Munoz v. Davis*, 141 Cal. App. 3d 420, 425 (1983) ("[U]nless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." (citation omitted))). However, neither *Stop Loss* nor the cases cited in *Stop Loss* address an action between insurers. *See Fireman's Fund Ins. Co.*, 2000 U.S. Dist. LEXIS 17688, at *16 ("The policies for apportioning damages in tort cases . . . are separate and distinct from the concerns of apportioning liability among insurers.").

California courts have not foreclosed the possibility of an equitable indemnity claim in an action between insurers. *See Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1289 (1998) ("[O]ne insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution or indemnity."); *Mitchell, Silberberg & Knupp v. Yosemite Ins. Co.*, 58 Cal. App. 4th 389, 394 (1997) ("[A]n insurer may settle a claim against its insured without prejudice to its right to seek equitable indemnity from other insurers potentially liable on the same risk on the ground that, although the settling insurer's policy does not provide

coverage, there is coverage under the other policies.") (emphasis omitted) (citations omitted); *but see Montrose Chem. Corp. of Cal. v. Superior Court*, 9 Cal. 5th 215, 228 and n. 5 (2020) (stating that "the insured may seek indemnification from every policy that covered a portion of the loss, up to the full limits of each policy . . . . The insurers can then sort out their proportional share through actions for equitable contribution or subrogation" (citations omitted)); *see also Travelers Indem. Co. of Conn. v. Hudson Ins. Co.*, No. 1:18-cv-00720-DAD-JLT, 2020 U.S. Dist. LEXIS 38661, at *22 (E.D. Cal. Mar. 5, 2020) (holding that insurer Travelers "can assert a cause of action for equitable indemnification" against insurer Hudson), *appeal filed* (Mar. 31, 2020); *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of Pa.*, No. 15-CV-02744-LHK, 2016 U.S. Dist. LEXIS 41659, at *23 (N.D. Cal. Mar. 28, 2016) (allowing an insurer to proceed on a claim against another insurer for equitable indemnity based on an unjust enrichment theory).

In this case, Skanska alleges that it is an insured under policies issued by Zurich American and National Interstate. Skanska alleges that under the terms of the National Interstate policies, National Interstate was obligated to provide a defense in the Chavarin Action. Skanska alleges that Zurich American provided a defense, paid defense costs, and indemnified Skanska in the Chavarin Action. Skanska alleges that National Interstate failed to provide any defense or pay defense costs in the Chavarin Action before May 26, 2017, and failed to pay its share of defense costs owed after May 26, 2017. The Court concludes that National Interstate fails to show that the facts alleged in the Complaint demonstrate that Skanska's equitable indemnity claim is barred as a matter of law. *See Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1289; *Mitchell, Silberberg & Knupp*, 58 Cal. App. 4th at 394. National Interstate's Motion to Dismiss is denied.

///

///

///

## I. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant National Interstate Insurance Company (ECF No. 7) is denied.

Dated: September 3, 2020

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court