1
2
3
4
5
6
7
8
9              UNITED STATES DISTRICT COURT
10            SOUTHERN DISTRICT OF CALIFORNIA
11

12  SKANSKA USA CIVIL WEST                   Case No.:  3:20-cv-00367-WQH-AHG
    CALIFORNIA DISTRICT INC.,
13                                           **ORDER RESOLVING JOINT
                            Plaintiff,       MOTION FOR DETERMINATION
14                                           OF DISCOVERY DISPUTE**
    v.
15                                           **[ECF No. 44]**
    NATIONAL INTERSTATE
16  INSURANCE COMPANY,
17                          Defendant.
18

19
20          Before the Court is Plaintiff Skanska USA Civil West California District Inc.
21  ("Plaintiff") and Defendant National Interstate Insurance Company's ("Defendant") Joint
22  Motion for Determination of Discovery Dispute. ECF No. 44. Plaintiff seeks an order from
23  the Court compelling Defendant to produce documents it withheld based on attorney-client
24  privilege. *Id*. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion to
25  compel.
26  **I.     FACTUAL BACKGROUND**
27          On February 27, 2020, Plaintiff filed its complaint, on behalf of itself and as assignee
28  of Zurich American Insurance Company ("Zurich"), alleging that Defendant breached its

duty to defend Plaintiff in a 2016 lawsuit. ECF No. 1. Plaintiff brought claims for (1) declaratory relief; (2) breach of insurance contract; (3) breach of implied covenant of good faith and fair dealing; (4) assigned claim for equitable indemnity; and (5) assigned claim for equitable contribution. *Id*. On January 8, 2021, Plaintiff filed an amended complaint,[1] the operative complaint in this matter. ECF No. 42.

Plaintiff is "a contractor that was involved in a highway reconstruction project at Interstate 805 in San Diego County." ECF No. 42 at ¶ 28. In February 2016, Plaintiff hired "Reeve Trucking Co., Inc. and/or Reeve Trucking Company" ("Reeve") "to transport thirteen 100-foot long steel I-beams from a construction site near Sorrento Valley, California to a storage site in Lakeside, California." *Id.* at ¶¶ 12, 29. On February 12, 2016, Peter Chavarin was driving a motorcycle heading northbound on State Route 67 when he collided with Reeve's tractor-trailer carrying the I-beams, driven by Reeve employee Christopher Collins, as the tractor-trailer was making a left turn from southbound State Route 67 toward the entrance of the storage site. *Id.* at ¶¶ 33–34. "Chavarin sustained severe injuries, including traumatic brain injury, coma, thoracic spine fracture, and other bone fractures." *Id.* at ¶ 35.

On April 6, 2016, Chavarin and his wife filed a complaint for damages against Skanska, Reeve, and Collins in the Superior Court for the State of California County of San Diego: *Peter Chavarin, et al. v. Christopher Collins, et al.*, No. 37-2016-00011241-CU-PA-CTL (the "*Chavarin* action"). *Id*. at ¶ 36. "[O]ne of the Chavarins' theories of liability against Skanska was that Skanska is vicariously liable for the conduct of Reeve and/or Collins under the doctrine of peculiar risk[.]" *Id*. at ¶ 39.

Plaintiff is insured under "a commercial general liability policy" issued by Zurich American (the "Zurich American Policy"). *Id.* at ¶ 23. The Zurich American Policy affords

---

[1] Though Plaintiff's amended complaint was not yet filed at the time Plaintiff propounded the discovery requests, given that Plaintiff still requests the information in light of the amendments, it is therefore the operative complaint in this matter.

coverage to Skanska "in excess of any and all 'other insurance, whether primary, excess, contingent on or on any other basis,' in cases where the loss arises out of the maintenance or use of an 'auto' not owned or operated by Skanska." *Id.* at ¶ 25. Under the Zurich American Policy and subject to Skanska's $500,000 deductible obligation, Zurich American provided a defense in the *Chavarin* action. *Id.* at ¶¶ 24, 38.

Plaintiff alleges it is also "an insured under commercial motor carrier liability insurance and excess liability insurance policies issued" to Reeve by Defendant. *Id.* at ¶ 3. Defendant issued Reeve a commercial motor carrier liability insurance policy (the "Primary National Interstate Policy") with limits of $1,000,000 per accident for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.* at ¶ 12. "The Reeve-owned tractor-trailer involved in the accident is a 'covered auto' under the Primary National Interstate Policy." *Id.* at ¶ 14. Thus, Defendant "has a duty to defend an insured in a suit asserting a claim for which a potential for coverage under the Primary National Interstate Policy exists." *Id.* at ¶ 13. Defendant also issued to Reeve an excess liability insurance policy (the "Excess National Interstate Policy") with a limit of "$5,000,000 Each Incident." *Id.* at ¶¶ 19, 21. "Status as an insured under the Excess National Interstate Policy is conferred to those same persons and entities which qualify as an insured under the Primary National Interstate Policy." *Id.* at ¶ 22.

"On or about April 15, 2016, tender was made to [Defendant] for [Plaintiff]'s defense and indemnity against the claims asserted against [Plaintiff] in the *Chavarin* action." *Id.* at ¶ 44. "On April 21, 2016, [Defendant] denied its obligation under the National Interstate Policies, or either of them, to defend and indemnify [Plaintiff] in the *Chavarin* action." *Id.* at ¶ 45. After the Chavarins filed first and second amended complaints, Defendant again declined to provide any defense to Plaintiff. *Id.*

"[I]n early May of 2017 [Defendant] agreed to pay $6,000,000 to settle the Chavarins' claims against Reeve and Collins only . . . ." *Id.* at ¶ 69. On or about

May 26, 2017, a copy of the Chavarins' proposed Third Amended Complaint was provided to Defendant, and Plaintiff demand that Defendant provide a defense. *Id.* at ¶ 78. On June 2, 2017, Defendant "wrote a letter advising that it will agree to participate in the defense of Skanska." *Id.* at ¶ 80. Defendant agreed to "continue to contribute toward the cost of the defense of [Plaintiff] in the *Chavarin* action . . . ." *Id.* at ¶¶ 91, 93.

In April 2018, "[t]he Chavarins agreed to settle their claims against [Plaintiff] in the *Chavarin* action in exchange for payment of $2,950,000." *Id.* at ¶ 112. Zurich American, without contribution by Defendant or by any other insurer, "paid $2,950,000, subject to reservation of rights, to indemnify [Plaintiff] in settlement of the Chavarins' liability claims asserted against [Plaintiff] in the *Chavarin* action." *Id.* at ¶ 117. Plaintiff alleges that Defendant "has not paid its full and equitable share of the fees and costs, incurred after May 26, 2017, of [Plaintiff]'s defense in the *Chavarin* action." *Id.* at ¶ 95. Defendant "has paid no amount for the fees and costs incurred in Skanska's defense in the Chavarin Action incurred prior to May 26, 2017." *Id.* at ¶ 96.

Though Plaintiff had originally asserted that "Zurich American had assigned to Skanska all of its rights and claims against National Interstate regarding the Chavarin Action, including without limitation those rights and claims it obtained by virtue of its payments for Skanska's defense [and indemnity] in the Chavarin Action[,]" in support of its assigned claims for equitable indemnity and equitable contribution, these claims were removed from the operative amended complaint. *Compare* ECF No. 1 at ¶¶ 100, 118, 146–63 *with* ECF No. 38-4 *and* ECF No. 42.

## II.   PROCEDURAL BACKGROUND

Plaintiff propounded discovery requests to Defendant on September 1, 2020. ECF No. 44-1 at 17–27. Defendant served its responses on October 1, 2020. ECF No. 44-1 at 30–49. Pursuant to the Court's Chambers Rules, on November 25, 2020, the parties alerted the Court that they disagreed about six discovery issues but sought to continue meeting and conferring. Email to Chambers (Nov. 25, 2020 at 4:53 p.m.); *see* Chmb.R. at 2. On December 9, 2020, Defendant provided Plaintiff a supplemental privilege log. ECF No.

44-1 at 2, 52–100. After further meet and confer efforts, certain issues were resolved. The parties jointly notified the Court about the remaining discovery issues on December 14, 2020. Email to Chambers (Dec. 14, 2020 at 9:59 a.m.). In an effort to resolve the disputes, the Court held a telephonic discovery conference on December 15, 2020. ECF No. 36. The Court found it appropriate to issue a briefing schedule. ECF No. 37. The parties timely filed their Joint Motion for Determination of Discovery Dispute. ECF No. 44. This order follows.

## III.   DISCOVERY REQUESTS AT ISSUE

Plaintiff seeks to compel responsive documents to its first set of Requests for Production of Documents ("RFPs"), specifically, numbers 1, 2, 4, 5, and 19–23. ECF No. 44 at 4. In RFP No. 1, Plaintiff requests:

> Any and all DOCUMENTS maintained by YOU pertaining to any claim or claims by SKANSKA under the NIIC PRIMARY POLICY concerning the CHAVARIN ACTION. DOCUMENTS responsive to this Request shall include, but are not limited to, any claim file or files, claim notes, adjuster notes, logs or log notes, documentation of supervisor, management or other internal review, documentation of authority and/or reserve requests and responses to authority and/or reserve requests, COMMUNICATIONS, and documentation of COMMUNICATIONS. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates number the responsive DOCUMENTS which have been or are being produced.

ECF No. 44-1 at 20–21. In RFP No. 2, Plaintiff requests:

> Any and all DOCUMENTS maintained by YOU pertaining to any claim or claims by SKANSKA under the NIIC EXCESS POLICY concerning the CHAVARIN ACTION. DOCUMENTS responsive to this Request shall include, but are not limited to, any claim file or files, claim notes, adjuster notes, logs or log notes, documentation of supervisor, management or other internal review, documentation of authority and/or reserve requests and responses to authority and/or reserve requests, COMMUNICATIONS, and documentation of COMMUNICATIONS. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates

5

number the responsive DOCUMENTS which have been or are being produced.

*Id*. at 21. In RFP No. 4, Plaintiff requests:

Any and all DOCUMENTS maintained by YOU pertaining to any claim or claims by REEVE under any insurance policy issued by YOU concerning the CHAVARIN ACTION. DOCUMENTS responsive to this Request shall include, but are not limited to, any claim file or files, claim notes, adjuster notes, logs or log notes, documentation of supervisor, management or other internal review, documentation of authority and/or reserve requests and responses to authority and/or reserve requests, COMMUNICATIONS, and documentation of COMMUNICATIONS. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates number the responsive DOCUMENTS which have been or are being produced.

*Id*. at 22. In RFP No. 5, Plaintiff requests:

Any and all DOCUMENTS maintained by YOU pertaining to any claims by Christopher Collins under any insurance policy issued by YOU concerning the CHAVARIN ACTION. DOCUMENTS responsive to this Request shall include, but are not limited to, any claim file or files, claim notes, adjuster notes, logs or log notes, documentation of supervisor, management or other internal review, documentation of authority and/or reserve requests and responses to authority and/or reserve requests, COMMUNICATIONS, and documentation of COMMUNICATIONS. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates number the responsive DOCUMENTS which have been or are being produced.

*Id*. In RFP No. 19, Plaintiff requests:

To the extent not produced in response to the foregoing Requests, any and all DOCUMENTS consisting of, relating to, documenting, or reflecting COMMUNICATIONS between YOU and any other PERSON or PERSONS concerning the limit or limits of insurance of the NIIC PRIMARY POLICY.

*Id*. at 25. In RFP No. 20, Plaintiff requests:

To the extent not produced in response to the foregoing Requests, any and all

DOCUMENTS consisting of, relating to, documenting, or reflecting COMMUNICATIONS between YOU and any other PERSON or PERSONS concerning the limit or limits of insurance of the NIIC EXCESS POLICY.

*Id*. In RFP No. 21, Plaintiff requests:

To the extent not produced in response to the foregoing Requests, any and all DOCUMENTS consisting of, relating to, documenting, or reflecting COMMUNICATIONS between YOU and any other PERSON or PERSONS concerning any settlement demand, including without limitation YOUR response to and/or negotiations concerning such settlement demand, in connection with the CHAVARIN ACTION. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier.

*Id*. at 25–26. In RFP No. 22, Plaintiff requests:

To the extent not produced in response to the foregoing Requests, any and all DOCUMENTS consisting of, relating to, documenting, or reflecting COMMUNICATIONS between YOU and any other PERSON or PERSONS concerning the settlement of claims against REEVE and Christopher Collins, in connection with the CHAVARIN ACTION. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates number the responsive DOCUMENTS which have been or are being produced.

*Id*. at 26. In RFP No. 23, Plaintiff requests:

To the extent not produced in response to the foregoing Requests, any and all DOCUMENTS consisting of, relating to, documenting, or reflecting COMMUNICATIONS between YOU and any other PERSON or PERSONS concerning the determination of good faith settlement in regards to the settlement of claims against REEVE and Christopher Collins in the CHAVARIN ACTION, including without limitation DOCUMENTS concerning the negotiation and drafting of terms relating to determination of good faith settlement as a condition to the settlement of claims against REEVE and Christopher Collins, the application for and other briefing supporting determination of good faith settlement of that settlement, and the drafting of the application for and other briefing supporting determination of good faith settlement of that settlement. If YOU contend that the DOCUMENTS requested in this Request have been or will be produced either voluntarily or in response to an earlier Request, please identify by Bates number the

responsive DOCUMENTS which have been or are being produced.

*Id*. Defendant objects to all nine discovery requests on the grounds[2] that responsive documents are protected from disclosure by the privileges afforded to attorney-client communications, work product, or confidential information related to Defendant's insurance business. *Id*. at 33, 35–36, 44–46. Defendant produced its nonprivileged documents, and detailed the documents withheld in a supplemental privilege log. ECF No. 44-1 at 2, 52–100.

## IV.  LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1). Courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Here, the issue is whether the discovery sought is nonprivileged. While the attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice[,]" the work product privilege "'protects the attorney's thought processes and legal recommendations.'" *Genentech, Inc. v. United States ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (quoting *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985)).

---

[2] Defendant also objected on the grounds that the requests are overbroad and are not relevant to any party's claims or defenses. ECF No. 44-1 at 35, 36, 44, 45. However, these objections were not reasserted in the instant motion, and are therefore deemed waived. *See, e.g.*, *SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."); *Sherwin-Williams Co. v. Earl Scheib of Cal.*, Inc., No. 12cv2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs).

3:20-cv-00367-WQH-AHG

When federal courts exercise diversity jurisdiction over a case, "questions of privilege are controlled by state law." *In re Cal. Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); ECF No. 42 at ¶¶ 1–2, 7–9 (alleging federal jurisdiction premised on diversity of citizenship); *see* FED. R. EVID. 501. Unlike attorney-client privilege, the work product doctrine is governed by federal law, even in pure diversity cases.[3] *Eagle Precision Techs., Inc. v. Eaton Leonard Robolix, Inc*., No. 03cv352-BEN-WMc, 2005 U.S. Dist. LEXIS 47173, at *8 n.3 (S.D. Cal. Aug. 11, 2005); *see, e.g*., *Century Sur. Co. v. Saidian*, No. CV-12-7428-SS, 2015 WL 12765555, at *2 (C.D. Cal. July 28, 2015) (finding that the work product doctrine in diversity cases is determined under federal law because the doctrine is not an evidentiary privilege); *U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 n.2 (N.D. Cal. 2010) (because the work product doctrine is not an evidentiary privilege "but rather, [a] procedural limitation[] on discovery, the scope of [the] asserted protection[] is determined by federal law, even when the federal court sits in diversity.").

The California attorney-client privilege is codified in California Evidence Code §§ 950 *et seq.* The privilege protects confidential communications between a client and an attorney. "The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client." *Mitchell v. Superior Court*, 691 P.2d 642, 645 (Cal. 1984). "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 819 P.2d 424, 431 (Cal. 1991) (quoting CAL. EVID. CODE § 952).

Under California law, "[t]he party claiming the [attorney-client] privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a

---

[3] "Courts that have applied federal law to the work product doctrine have reasoned that it is not a privilege within the meaning of Rule 501." *Eagle Precision Techs.*, 2005 U.S. Dist. LEXIS 47173, at *8 n.3.

communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 219 P.3d 736, 741 (Cal. 2009) (citations omitted); *see also* CAL. EVID. CODE § 952. Once the party claiming privilege has made a *prima facie* showing that the material claimed to be privileged is a communication made in the course of an attorney-client relationship, a presumption of privilege then applies to the communication, and the burden shifts to the party opposing the claim "to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 219 P.3d at 741 (citing CAL. EVID. CODE § 917(a) and *Wellpoint Health Networks, Inc. v. Superior Court of L.A. Cty.*, 68 Cal. Rptr. 2d 844, 852–53 (Cal. Ct. App. 1997)).

California law recognizes an implied at-issue waiver of attorney-client privilege in limited circumstances. A party seeking to discover privileged information can show waiver by demonstrating that the client has (1) "put the otherwise privileged communication directly at issue" and (2) "that disclosure is essential for a fair adjudication of the action." *S. Cal. Gas Co. v. Pub. Utilities Comm'n*, 784 P.2d 1373, 1378 (Cal. 1990) ("*SoCal Gas*").

Similarly, to determine whether implied waiver applies to the work product doctrine under federal law, courts in this circuit consider (1) whether the party is asserting the doctrine as the result of some affirmative act, (2) whether through this affirmative act, the asserting party puts the privileged information at issue, and (3) whether allowing the privilege would deny the opposing party access to information vital to its case. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1995); *SoCal Gas*, 784 P.2d at 1379 n.11.

## V.   PARTIES' POSITIONS

Plaintiff seeks information through discovery to support its bad faith claim. ECF No. 44 at 2. Plaintiff seeks information to refute Defendant's claim that, because it had no choice but to settle, it did not commit bad faith when it settled the underlying action on behalf of Reeve and Collins. *Id*. Thus, Plaintiff seeks information regarding whether counsel's decision to settle the case was reasonable. *Id*. at 7. Plaintiff argues that Mr. McFaul's declaration is not solely a recitation of facts, protected by attorney client privilege or the work product doctrine, because he also included his legal opinions and

evaluations of the case. *Id*. at 2, 6–7. Thus, by affirmatively putting before the Court testimony regarding the reasonableness of Defendant's conduct, Plaintiff argues that any privilege objections have been impliedly waived. *Id*. Plaintiff also contends that it needs the information to refute and contest the remainder of Mr. McFaul's testimony. *Id*. at 7.

In sum, Plaintiff seeks to discover Mr. McFaul's "other legal opinions and conclusions, and the documents and other materials in his files in which his opinions are based or set out, so that Skanska has the opportunity to contest the evidence NIIC has put forth." *Id*. Specifically, Plaintiff is trying to find out

> (1) whether McFaul's other legal opinions about this matter are consistent or divergent with those he expressed in his declaration, (2) how he arrived at and justifies his opinions in the declaration including the opinion that there were no other options but to settle without obtaining a release of the claims against Skanska, contrary to California case law which specifies other options, (3) how it is that he concluded that NIIC's applicable policy limits were $6,000,000 for the *Chavarin* matter, and (4) how it is that he concluded that Skanska was fully protected from any exposure when he declares, in the same declaration, that John Petze sent him a copy of the Zurich policy, which the exhibit shows had a post-it (or other yellow marking) indicating the page showing Skanska had a $500,000 deductible.

*Id*. at 7–8.

Defendant contends that Plaintiff amending the complaint moots the issue. *Id*. at 11. Because Plaintiff removed its assignment claims from Zurich from its amended complaint, Defendant argues that the underlying settlements in *Chavarin* are no longer at issue. *Id*. at 10–11 (referring to ECF No. 38-4 at ¶ 6). Further, since Mr. McFaul and Defendant had an attorney-client relationship, Defendant contends that it has established a *prima facie* case that privilege applies. ECF No. 44 at 13. According to Defendant, Plaintiff has not met its burden of showing that a waiver occurred. *Id*. at 13–14. Defendant also reiterates that the McFaul declaration does not include communications between Mr. McFaul and Defendant, and instead recounts Mr. McFaul's communications with plaintiff's counsel in the *Chavarin* action. *Id*. at 11.

/ /

## VI.    DISCUSSION

Here, it is undisputed that there was an attorney-client relationship between Defendant and Mr. McFaul, where Mr. McFaul provided legal advice to Defendant while representing it in the *Chavarin* action. *See* ECF No. 15-3 at ¶ 2–3; ECF No. 44-2 at ¶ 2–4. Thus, Defendant has satisfied its burden to make a *prima facie* showing. *Costco*, 219 P.3d at 741 ("The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise"). Thus, the burden has shifted to Plaintiff to establish that the privilege does not apply. *Id.*

### A.    Express Waiver - Analysis of McFaul Declaration

In support of its waiver argument, Plaintiff points to four paragraphs of the McFaul declaration that purport to expose his legal reasoning and therefore waive privilege. ECF No. 44 at 6–7 (referring to ECF No. 15-3 at ¶¶ 17, 26, 34, 38).[4] In paragraph 17, Mr. McFaul stated:

> Although NIIC strongly disagreed with Zurich's contention that the Chavarins were asserting vicarious liability claims against Skanska that would have triggered a potential for coverage for Skanska under the NIIC policies, we made every effort to convince Petze and his clients to include Skanska in the proposed policy limits settlement.

ECF No. 15-3 at ¶ 17. Plaintiff contends that this paragraph "opine[d] whether sufficient efforts were undertaken to protect Skanska." ECF No. 44 at 6. The Court agrees with Defendant that this paragraph is a summary of factual events, and not a summary of any legal opinions or legal analysis.

In paragraph 26, Mr. McFaul stated:

> Based on my review of the Zurich policies provided by Petze and my belief that they were genuine based on Petze's representation that Skanska itself had

---

[4] Upon careful review of the McFaul declaration, the Court finds that most paragraphs clearly refer to Mr. McFaul's unprivileged communications with the plaintiff's counsel in the *Chavarin* action, other external communications, or facts rather than opinions. *See* ECF No. 15-3 at ¶¶ 13–16, 18–25, 27–33, 35–37, 39–48.

produced them in the *Chavarin* lawsuit, NIIC and I understood that Zurich afforded Skanska up to $25,000,000 in limits for its liability in the *Chavarin* lawsuit.

ECF No. 15-3 at ¶ 26. Plaintiff contends that this paragraph "describe[s] his legal analysis and his conclusions concerning Skanska's insurance under the Zurich policies." ECF No. 44 at 7. Defendant responds that this paragraph simply summarizes the dollar amount of the policy limits, explaining that it was more than what the plaintiffs were seeking in the *Chavarin* action. *Id.* at 17. The Court finds that, though the paragraph does slightly implicate Mr. McFaul's thinking, it does not broadly waive privilege.

In paragraph 34, Mr. McFaul stated:

Based on the evidence and arguments regarding liability and damages that had presented by Petze, as well as Reeve Trucking's declaration that it had no applicable insurance other than the NIIC policies, it was clear that NIIC's rejection of the $6,000,0000 policy limits demand would have exposed Reeve Trucking and Collins to a significant risk of a judgment in excess of those limits and, as a result, potentially ruinous personal liability. By contrast, the copies of the Zurich policies I had recently reviewed indicated that Skanska was fully protected from any exposure to its personal assets by the $25,000,000 in limits available to it under those policies.

ECF No. 15-3 at ¶ 34. Plaintiff contends that Mr. McFaul "state[d] his reasoning and legal conclusions about the anticipated effects of NIIC's conduct on Skanska as compared to Reeve and Collins." ECF No. 44 at 7. Defendant responds that this paragraph simply summarizes the dollar amount of the policy limits, explaining that it was more than what the plaintiffs were seeking in the *Chavarin* action. *Id.* at 17. The Court finds that this paragraph is a summary of factual events, and not a summary of any legal opinions or legal analysis.

In paragraph 38, Mr. McFaul stated:

At this point, it was clear that NIIC had only two choices: (1) accept the $6,000,000 policy limits demand on the Chavarins' terms and take Reeve Trucking and Collins out of harm's way or (2) reject the demand and expose Reeve Trucking and Collins to a potential excess judgment and financial ruin. There was no third option.

ECF No. 15-3 at ¶ 38. Plaintiff contends that Mr. McFaul "g[a]ve his legal opinion about what choices an insurer has when faced with a demand for settlement of claims against fewer than all insureds." ECF No. 44 at 6. Defendants respond that "is another non-legal summary of the factual circumstances discussed in detail in the declaration. Specifically, McFaul is recapping that, despite his extensive communications with Petze regarding the potential inclusion of Skanska in the policy limits settlement, the Chavarins ultimately demanded that NIIC either accept or reject their demand 'as is' and would not agree to modify the demand to include any release of their claims against Skanska." *Id.* at 17. The Court agrees with Defendant, and finds that no broad waiver has occurred here.

### B.   Implied Waiver - Whether the Information is At Issue

The parties disagree about whether the information is at issue. In doing so, the parties repeatedly refer to the following cases, which the Court will briefly address in turn: *SoCal Gas v. Public Utilities Comm'n*, 784 P.2d 1373 (Cal. 1990), *Mitchell v. Superior Court*, 691 P.2d 642 (1984), and *Merritt v. Superior Court*, 88 Cal. Rptr. 337 (Cal. Ct. App. 1970).

In *SoCal Gas*, a regulatory action considering whether the buyout of a supplier contract was reasonable, the court found that implied waiver of attorney-client privilege did not apply because the privileged communications were not placed at issue—"[SoCal Gas does not] intend[] to rely on its attorneys' advice or state of mind to demonstrate that it acted reasonably when it bought out the [] contract." 784 P.2d at 1379. Further, the court did not find the privileged documents vital to a fair adjudication of the proceeding. *Id.* at 1380. In finding that the actual legal analysis provided by SoCal Gas's attorneys was not essential to the case, the court explained that the reasonableness issue was "an objective one which [did] not depend on a particular attorney's analysis, but upon the terms of the contract itself and surrounding factual circumstances." *Id.* There, the court also highlighted an analogous case regarding allegations of a bad faith denial of insurance coverage, *Aetna Casualty & Sur. Co. v. Superior Court*, 200 Cal. Rptr. 471 (Cal. Ct. App. 1984), where "[t]he court held that Aetna had not impliedly waived its attorney-client privilege since it

was not relying on advice of counsel to show that it acted reasonably, but instead sought to show that its conduct was reasonable based on the underlying facts. Moreover, the court held that the fact that Aetna's state of mind was at issue in the insured's bad faith action did not place in issue its attorneys' state of mind or their advice." *SoCal Gas*, 784 P.2d at 1378.

In *Mitchell*, though the factual scenario is distinguishable,[5] the court nevertheless found "no 'waiver of the attorney-client privilege where the substance of the protected communication is not itself tendered in issue, but instead simply represents one of several forms of indirect evidence in the matter.'" *SoCal Gas*, 784 P.2d at 1378 (quoting *Mitchell*, 691 P.2d at 650); *see also Schlumberger, Ltd. v. Superior Court,* 171 Cal. Rptr. 413, 417 (Cal. Ct. App. 1981) ("[p]rivileged communications do not become discoverable because they are related to issues raised in the litigation").

In *Merritt*, where plaintiff asserted a bad faith claim against an insurer, the court "held that plaintiff had impliedly waived his privilege since he had specifically put the state of mind of his attorney at issue by alleging that the defendant's attorney had confused his attorney and impeded his attorney's ability to settle his claim." *SoCal Gas*, 784 P.2d at 1378 (citing *Merritt*, 88 Cal. Rptr. at 342). However, its decision was "limited in its application to the one situation in which a client has placed in issue the decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters." *SoCal Gas*, 784 P.2d at 1379–80.

After consideration of these examples, finding *SoCal Gas* and *Aetna* persuasive, the Court finds that the information is not at issue.

/ /

---

[5] Several plaintiffs filed suit seeking damages for emotional distress against various entities involved with chemicals that plaintiffs alleged contaminated air and ground water around their homes. One defendant sought discovery of information or documents a plaintiff received from her attorneys about one of the chemicals. *SoCal Gas*, 784 P.2d at 1378 (citing *Mitchell*, 691 P.2d at 650).

### C.     Whether the Evidence is Essential to a Fair Adjudication of this Case

Here, the evidence is not *essential* to a fair adjudication of this case. *"*Although these privileged communications might help [Plaintiff] litigate this case, [Plaintiff] may still defend against [Defendant]'s claims without introducing the substance of these privileged communications into evidence." *Luna Gaming San Diego LLC v. Dorsey & Whitney, LLP*, No. 06cv2804-BTM-WMc, 2010 WL 148713, at *2 (S.D. Cal. Jan. 11, 2010).

Plaintiff contends that it needs the information to refute and contest the remainder of Mr. McFaul's testimony. ECF No. 44 at 7. However, the Court is persuaded by Defendant's representation that its original motion for summary judgment, and the McFaul declaration at issue, are both mooted by Plaintiff's amendment of the complaint to remove all assignment claims. ECF No. 44 at 11 ("Had Skanska filed its amended complaint as the original complaint, there would have been no need for NIIC to have filed its motion for summary judgment or the supporting McFaul declaration"). Plaintiff did not meet its burden to show, given the amendment, that the privileged communication "goes to the heart of the claim in controversy." *Mitchell*, 691 P.2d at 649; *SoCal Gas*, 784 P.2d at 1380 (finding that counsel's actual legal analysis was not essential to the case, explaining that the reasonableness issue was "an objective one which [did] not depend on a particular attorney's analysis, but upon the terms of the contract itself and surrounding factual circumstances"); *see generally Aetna*, 200 Cal. Rptr. at 475.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel is **DENIED**.


**IT IS SO ORDERED.**

Dated:  March 5, 2021

_____

Honorable Allison H. Goddard
United States Magistrate Judge